Rickey Ivie (State Bar No. 76864)
Email: rivie@imwlaw.com
Angela M. Powell (State Bar No. 191876)
Email: apowell@imwlaw.com
Ayang Inyang (State Bar No. 339484)
Email: ainyang@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 3200
Los Angeles, California 90071
Tel.   (213) 489-0028
Fax   (213) 489-0552

Attorneys for Defendant, County of Los Angeles

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY STEVENS, BRIANA ORTEGA, ELIJAH ORTEGA, MARIAH ORTEGA, and MARISSA ORTEGA,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, municipal entity; ADAM NELSON, an individual; SHAWN MERRICK, an individual; JUSTIN MASRI, an individual; RICHARD MENDOZA, an individual; and DOES 1-10 inclusive,<br><br>Defendants. | CASE NO.:<br><br>LASC Case No.: 24STCV04765<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§1441(a) AND 1446(a); DECLARATION OF ANGELA M. POWELL IN SUPPORT THEREOF**<br><br>First Amended Complaint Filed:   June 7, 2024 |

**PLEASE TAKE NOTICE** that Defendant COUNTY OF LOS ANGELES, ("Defendant"), hereby removes this action from the Superior Court for the State of California, County of Los Angeles to the United States District Court for the Central District of California. The removal is made pursuant to 28 U.S.C. §§ 1441 (a), 1446(a), on the facts set forth below:

1. The COUNTY OF LOS ANGELES is named as a defendant in this civil action filed in the Superior Court of the State of California; County of Los Angeles entitled JAY STEVENS, BRIANA ORTEGA, ELIJAH ORTEGA, MARIAH ORTEGA, and MARISSA ORTEGA v. COUNTY OF LOS ANGELES, ADAM NELSON, an individual, SHAWN MERRICK, an individual, JUSTIN MASRI, an individual; RICHARD MENDOZA, an individual and DOES 1 through 10, inclusive, Superior Court Case No. 24STCV04765. Plaintiffs JAY STEVENS, BRIANA ORTEGA, ELIJAH ORTEGA, MARIAH ORTEGA, and MARISSA ORTEGA ("Plaintiffs") filed this First Amended Complaint for Deprivation of Civil Rights ("Complaint") on or about June 7, 2024. A true and correct copy of Plaintiffs' Summons and First Amended Complaint for Deprivation of Civil Rights Under 42 U.S.C. § 1983 ("FAC"), is attached as Exhibit 1.

2. Defendant COUNTY OF LOS ANGELES was served on or about July 5, 2024.

3. This action meets the original jurisdiction requirements of 28 U.S.C. § 1441(a) and is removable by Defendant pursuant to 28 U.S.C. § 1446(a). A case is removable from state to federal court if the action could have been originally commenced in federal court. 28 U.S.C. § 1441(a); *Grubbs v. General Electric Credit Union Corp.*, 405 US 699, 702 (1972). The propriety of removal is determined at the time the petition for removal is filed by the reference to the lawsuit filed in state court. *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 343-44 (3d Cir. 1974). When the lawsuit states a claim invoking the original jurisdiction of the federal court, the action is removable. *Id.* Federal district courts have original jurisdiction in the district courts over all actions brought under 42 U.S.C. §1343(a)(3). Moreover, federal district courts

have original jurisdiction over all actions involving federal questions. *See*, 28 U.S.C. § 1331.

4. The gravamen of this action is the federal civil rights claim set forth in the only cause of action of Plaintiffs' FAC.

5. Defendant COUNTY OF LOS ANGELES consents to this removal. (*See*, Declaration of Angela M. Powell).

6. The COUNTY OF LOS ANGELES is the only defendant who has been served. The COUNTY OF LOS ANGELES consents to the removal of this matter. Accordingly, there is no other defendant(s) who needs to consent for this case to be removed. *See*, 28 U.S.C. Code §1446(b)(2)(A).

8. The Notice of Removal is being filed in this Court and in the Superior Court of the State of California, County of Los Angeles.

WHEREFORE, the above-entitled action, now pending in the Superior Court of the State of California, County of Los Angeles, is removed to the United States District Court for the Central District of California.

DATED: July 18, 2024

**IVIE McNEILL WYATT PURCELL & DIGGS**

/s/ *Angela M. Powell*
Rickey Ivie
Angela M. Powell
Ayang J. Inyang
Attorneys for Defendant
COUNTY OF LOS ANGELES

# DECLARATION OF ANGELA M. POWELL

I, Angela M. Powell, declare as follows:

1. I am an attorney at law duly licensed and admitted to practice before all courts of the State of California, in the United States District Court for the Central and Eastern Districts of California and the United States Court of Appeals for the Ninth Circuit. I am an Attorney and Director in the law firm of Ivie McNeill Wyatt Purcell & Diggs, counsel for Defendant County of Los Angeles in the within action. The statements contained in this declaration are made of my personal knowledge except as to those statements expressly stated to be made under information and belief. If called to testify as a witness, I could and would competently testify to the facts set forth herein below.

2. Attached hereto as Exhibit 1, is a true and correct copy of Plaintiff's First Amended Complaint for Deprivation of Civil Rights Under 42 U.S. C. §1983 and the Summons served on the County of Los Angeles on or about July 5, 2024.

3. The County of Los Angeles is the only defendant to date who has been served. The County of Los Angeles consents to the removal of this matter.

4. The Notice of Removal is being filed in this Court and in the Superior Court of the State of California, County of Los Angeles.

I declare under penalty of perjury to the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of July 2024 at Los Angeles, California.

/s/ *Angela M. Powell*
Angela M. Powell, Declarant

# EXHIBIT 1

SUM-100

# SUMMONS ON FIRST AMENDED COMPLAINT
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COUNTY OF LOS ANGELES, a municipal entity; (Additional Parties Attachment Form is Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JAY STEVENS, BRIANA ORTEGA, ELIJAH ORTEGA, MARIAH ORTEGA, and MARISSA ORTEGA

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/28/2024 1:59 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Kim, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse
111 N. Hill Street
Los Angeles, CA 90012

**CASE NUMBER:** *(Número del Caso):* 24STCV04765

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Vincent Miller, Law Offices, 16255 Ventura Boulevard, Suite 625, CA 91436 213-948-5702

**DATE:** 06/28/2024
*(Fecha)*

David W. Slayton, Executive Officer/Clerk of Court,
Clerk, by D. Kim, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* County of Los Angeles, a municipal entity
   under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* CCP 416.50 (public entity)
4. ☒ by personal delivery on *(date):* 7/5/24

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

VINCENT MILLER (SBN 291973)
NICK SAGE (SBN 298972)
The Law Offices of Vincent Miller
16255 Ventura Boulevard, Suite 625
Encino, CA 91436
Telephone: (213) 948-5702

Attorney for Plaintiffs Jay Stevens, Briana Ortega, Elijah Ortega, Mariah Ortega, Marissa Ortega

FILED
Superior Court of California
County of Los Angeles
06/07/2024
David W. Slayton, Executive Officer / Clerk of Court
By: _____ N. Osollo _____ Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| JAY STEVENS, BRIANA ORTEGA, ELIJAH ORTEGA, MARIAH ORTEGA, and MARISSA ORTEGA,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, municipal entity; ADAM NELSON, an individual, SHAWN MERRICK, an individual, JUSTIN MASRI, an individual; RICHARD MENDOZA, an individual; DOES 1-10 inclusive,<br><br>Defendants. | CASE NO: 24STCV04765<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR:**<br><br>**DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**<br><br>**Jury Trial Demanded** |

Plaintiffs JAY STEVENS, BRIANA ORTEGA, ELIJAH ORTEGA, and MARIAH ORTEGA, MARISSA ORTEGA and through their undersigned attorneys, hereby pray to this honorable Court for relief and remedy based on the following:

## INTRODUCTION

1. Plaintiffs are individuals residing in Los Angeles, California. Plaintiff Jay Stevens is African American. The other Plaintiffs are of Latino heritage.

2. At all times mentioned herein, Defendant County of Los Angeles (hereinafter, "Los Angeles County" "Defendant County"), a government agency, is located in Los Angeles County, California. The Los Angeles County Sheriff's Department ("LASD") is a branch of Los Angeles County.

3. Individual Defendants, Sergeant Adam Nelson, and deputies Shawn Merrick, Justin Masri, and Richard Mendoza worked for LASD before being terminated for what they did to Plaintiffs.

4. DOE Defendant deputies are employees of the County, and work as deputies for LASD. The Deputies belong to the LASD deputy subgroup, the Indians, which operates out of LASD's Industry Station. There are over 60 members in this deputy gang/subgroup.

5. LASD is notorious for subgroups which have often morphed into gang-like groups. LASD and the County have known about deputy gangs for over 50 years and have done no intervention to protect victims of these gangs, including other deputies and residents. For the last five years, since March 2019, when coverage of the violent deputy gang, the Banditos, exploded in the media, County leaders have admitted the deputy gangs exist, that they cause violence against residents and other deputies and violate their constitutional rights, and that there is an urgent need for reform. Five years later, there has been no reform, as the County has only given lip service, and repeatedly lied in litigation regarding the Banditos, covering up the issue simply to save the County money, at the expense of their employees' and residents' well-being and safety. As a result of the County's false representations, and failure to police itself, the State Attorney General recently announced that it is forcing the County to reform itself.

6. The County allowed and allows the practice and pattern of deputy gang involvement and violent acts against residents and other deputies to continue, in violation of victims' civil rights. The County's willful cover up of deputy gangs caused harm to Plaintiffs here.

7. In 2023, the County's own Civilian Oversight Commission released a 70-page report condemning the "cancer" of deputy gangs, saying they "create rituals that valorize violence, such as recording all deputy-involved shootings in an official book, celebrating with 'shooting parties,' and authorizing deputies who have shot a community member to add embellishments to their common gang tattoos."

8. The County's continued inaction, even after it admitted in 2019 that LASD allowed the existence of deputy gangs and that the County must do reform to prevent future harm to

deputies and residents – specifically, failure to investigate and discipline employees in the face of widespread constitutional violations – supports an inference that an unconstitutional custom or practice has been unofficially adopted by the County.

9. On February 28, 2022, Plaintiffs, all of whom but Brianna Ortega were teenagers at the time, went to bowl at Bowlium Lanes in the City of Montclair. After they were done bowling, they went out to their two cars.

10. Unfortunately, a group of LASD deputies, including DOE Defendants, inked members of the Indians, were also at the venue. Defendants Nelson and Merrick have admitted to having Indians tattoos. Nelson and his group of deputies decided to bully Plaintiffs because as minority teenagers they looked vulnerable. The deputies walked past the teenagers and pushed open one of the doors on Plaintiffs' car as one of the teenagers was trying to close it.

11. The Plaintiffs were intimidated by the group of cops, terrified of being assaulted by a gang of adult men. This intimidation encouraged the deputies to escalate their confrontation with the Plaintiffs. The teenagers were terrified at all times during the encounter with the deputies, with some of the teens crying, and asking the deputies to stop the assault.

12. The Defendants initiated the confrontation with the teenagers when Defendant Nelson approached one of the Plaintiff's cars and swung their door open. The deputies then proceeded to terrify the teenagers as Defendant Merrick flashed his LASD handgun, deputies mocked the teenagers, and screamed obscenities at them, including racist comments and homosexual slurs. A dozen or so cops got into the teens' faces, threatening to batter them, with Merrick swinging a car door several times to violently shake the car, before slamming the car door shut. Several of the deputies fixated on the African American teenager in the group, Plaintiff Jay Stevens.

13. Defendants Merrick and Nelson made blatantly racist statements and called Plaintiff Stevens a monkey and the "n" word, and also called the teens homosexual slurs. Defendant then Masri punched Stevens hard in the face, and several of the other deputies immediately grabbed Stevens to make sure he wouldn't be able to defend himself. This was a one-sided

attack on innocent victims and not in any way a two-way fight. The Defendant deputies yelled "cops, cops, cops!" at Plaintiffs, using their authority to intimidate them.

14. The teenagers escaped from the cops driving their cars away from the venue. The deputies laughed at the teenagers as they drove off.

15. After the teenagers escaped the cops, the deputies did not report the violent assaults to their supervisors, hiding what they had done. Plaintiffs were too frightened of the men to report it initially. However, a witness reported the assaults to the Montclair Police Department.

16. Some of the perpetrating deputies then lied to the Montclair Police about the encounter, their racist statements, and the assaults on Plaintiffs, even though video from the bowling alley showed they were lying. The police report is a false and inaccurate one and is mostly based on lies by Defendants.

17. The deputy Defendants sought to further intimate the victims into not reporting the incident. Defendants tried to get Plaintiff Brianna Ortega's phone number, to call her and intimidate her. Defendants used the Montclair Police Department to try to get the phone number.

18. LASD investigated the matter and the perpetrating deputies. Defendant deputies lied to investigators, including that their deputy gang tattoo represented "work ethic."

19. Oddly, LASD did not ever bring in the victims to LASD to do Internal Affairs Bureau ("IAB") interviews with them. This demonstrates that the investigation was not an objective and thorough investigation. LASD also failed to do a thorough investigation into the subgroup/gang, to identify the members of the Indians.

20. While the County was responsible for allowing the deputy subgroup, the Indians, to continue to operate and harm residents, Plaintiffs, LASD has admitted Plaintiffs were harmed through Defendants' wrongful conduct.

21. Sheriff Robert Luna announced he was shocked by the deputies' "outrageous" behavior and terminated the deputies for what they did to Plaintiffs, and for their affiliation to the deputy gang. LASD fired four of the deputies who attacked Plaintiffs and disciplined several others.

22. In response to a report on the Indians' attack on Plaintiffs, a 2024 motion by Los Angeles County Supervisor Hilda Solis requested that the sheriff compile a report about the Industry

Indians, including when the group formed, misconduct it has been linked to, and any warning signs of gang activity at the station. The motion also asked for an update on a stronger anti-gang policy.

23. This Board of Supervisors' motion was reminiscent of several made by the Supervisors dating back to 2019 regarding the deputy gang, the Banditos, operating out of LASD's East Los Angeles Station, and other deputy gangs. Given the County has only given lip service to addressing its most gang-like deputy subgroup, the Banditos, demonstrates the customs and practices of deputy subgroups assaulting other residents and deputies continued up until the assault on Plaintiffs in 2022, and continues moving forward. Thus, more residents like Plaintiffs here will be assaulted by deputy gang members with their constitutional rights violated by the County.

24. The County's failure to address deputy gangs, and their attacks on Latino and African American residents and employees, with the County leaders' five years of hollow calls for reform, caused the harm to Plaintiffs and violation of their constitutional rights.

25. Defendants assault of Plaintiffs has caused severe stress and PTSD, traumatized them to the point of being terrified of the police, having nightmares and scared to being around deputies. Plaintiffs are scared the deputy gang will hunt them down and retaliate against them for reporting the assaults. Plaintiffs are aware that the County won't do anything to protect them. It should be noted that one of the victims of the Indians in the incident did not join this lawsuit out of that fear of retaliation. He is scared that he will be killed if his name is on this lawsuit.

26. The Defendant County violated its own internal procedures by using unreasonable force. Section 3-10/030.00 – Unreasonable Force: Department members shall use only that force which is objectively reasonable. Unreasonable force is that force that is unnecessary or excessive given the totality of the circumstances presented to Department members at the time the force is applied. Department members shall use only that force which is objectively reasonable. Unreasonable force is prohibited. The use of unreasonable force will subject Department members to discipline and/or prosecution. The basis in determining whether

force is "unreasonable" shall be consistent with the Supreme Court decision of *Graham v. Connor*, 490 U.S. 386 (1989).

27. Given that Plaintiffs, all but one were teenagers at the time, were innocent victims, the force used was blatantly unreasonable and should not have been used at all. Defendants identified themselves as cops to Plaintiffs merely as a means to intimidate Plaintiffs.

28. The deputy Defendants are employed by the County. LASD is a division in the County of Los Angeles and the County is liable for all wrongful acts committed by LASD and deputy employees.

29. Plaintiffs are informed, and believe and thereupon allege that Defendant DOES 1-10, and each of them, whether individual, corporate, associate or otherwise, some of which are still unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. Plaintiffs will further amend their complaint to show the DOE Defendants true names and capacities, together with appropriate charging language, when such information has been ascertained. Plaintiffs will file DOE amendments, and/or ask leave of court to amend this Complaint to assert the true names and capacities of these Defendants when they have been ascertained.

30. Plaintiffs are informed and believe, and upon such information and belief, allege that each Defendant designated as a DOE was and is in some manner, negligently, wrongfully, or otherwise responsible and liable to Plaintiffs for the injuries and damages hereinafter alleged and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

31. Plaintiffs are further informed and believe, and thereupon allege, that at all times relevant hereto, Defendants, and each of them, acted in concert and in furtherance of the interests of each other Defendant.

32. At all relevant times, Defendants or their predecessors in office have acted or failed to act, as alleged herein, under the color of state law.

## JURISDICTION AND VENUE

33. This Court has jurisdiction over all state causes of action. The venue is proper because Defendants are located in the County of Los Angeles.

FAC    STEVENS, et. Al v. LOS ANGELES COUNTY, et al.                              Page 6

## PARTIES

34. Plaintiffs are individuals residing in Los Angeles. Plaintiff Jay Stevens is African American. Plaintiffs Briana Ortega, Elijah Ortega, Mariah Ortega, and Marissa Ortega are of Latino heritage.

35. Defendant Los Angeles is a municipal entity that operates and operated LASD, which is an agency of the County.

36. DOE Defendant deputies are employees of the County, and work as deputies for LASD, and belong to the LASD deputy subgroup, the Indians, which operates out of LASD's Industry Station.

## FIRST CAUSE OF ACTION
## (FOR DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C.§1983 AGAINST THE DEFENDANT COUNTY OF LOS ANGELES, ADAM NELSON, SHAWN MERRICK, JUSTIN MASRI, RICHARD MENDOZA AND DOE DEFENDANTS 1-10)

37. Plaintiffs repeat and re-allege as though fully set forth herein each and every allegation, 1-36, contained in the preceding paragraphs of this complaint.

38. Under section 1983 of the United States Code, the County and individual Defendants are liable for subjecting Plaintiffs to conduct that occurred under color of state law, and this conduct deprived them of rights, privileges, or immunities guaranteed under the 4th, 5th, and 14th Amendments of the Constitution of the United States of America.

39. According to 42 U.S.C. § 1983, Civil action for deprivation of rights: every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

40. Plaintiffs are members of a protected class, as African American and Latino residents, and LASD's deputy gangs like the Indians are notorious for victimizing African American and Latino residents.

41. On and before February 28, 2022, the present Plaintiffs possessed the rights, guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, to be free from unreasonable seizures in the form of excessive force by Deputy Sheriffs acting under the color of law.

42. Defendants ADAM NELSON, SHAWN MERRICK, JUSTIN MASRI, RICHARD MENDOZA and DOEs 1 through 10, inclusive, without just and legal cause physically assaulted all of the Plaintiffs and punched Plaintiff Stevens in the face and restrained him by force, and thereby caused Plaintiff Stevens the various injuries and damages alleged herein. Defendants also mocked Plaintiffs, and screamed obscenities at them, including racist comments and homosexual slurs. Defendants further got into Plaintiffs' faces, threatening to batter them, with Defendant Merrick swinging a car door several times to violently shake Plaintiffs' car before slamming the car door shut.

43. Plaintiffs had not assaulted said defendants or any other person, was unarmed, compliant and helpless, and the use of force on Plaintiff was unjustified and unreasonable under the circumstances and constituted an excessive use of force.

44. Defendants' actions deprived Plaintiffs of their constitutional rights under the fourth and fourteenth amendments of the constitution by assaulting them. Defendants made Plaintiffs fear for their lives as they terrorized them. Plaintiffs also fear the deputies and subgroup associates will retaliate against them.

45. Defendants ADAM NELSON, SHAWN MERRICK, JUSTIN MASRI, RICHARD MENDOZA and DOEs 1 through 10, inclusive, acted specifically with the intent to deprive the Plaintiffs of the following rights under the United States Constitution:

    a. Freedom from unreasonable searches and unreasonable seizures, in the form of the use of excessive force by Deputy Sheriffs,
    b. Freedom from a deprivation of liberty without due process of law; and
    c. Freedom from summary punishment.

46. Said Defendants subjected Plaintiff to the aforementioned deprivations by either actual malice, deliberate indifference or a reckless disregard of his rights under the U.S. Constitution.

47. As a direct and proximate result of the aforementioned acts of defendants DOES 1 through 10, inclusive, Plaintiffs suffered serious physical injuries, and/or were physically, psychologically, and emotionally impaired.

48. The aforementioned acts of defendants ADAM NELSON, SHAWN MERRICK, JUSTIN MASRI, RICHARD MENDOZA and DOEs 1 through 10, were willful, wanton, malicious and oppressive thereby justifying the awarding of exemplary and punitive damages as to defendants DOEs 1 through 10, inclusive.

49. Defendants ADAM NELSON, SHAWN MERRICK, JUSTIN MASRI, RICHARD MENDOZA and DOEs 1 through 10, inclusive, acted at all times herein knowing full well that the established practices, customs, procedures and policies of the County of Los Angeles Sheriff's Department would allow a cover-up and allow the continued use of illegal force in violation of the Fourth Amendment of the Constitution of the United States.

50. At all times mentioned herein each of the individual Los Angeles County, and sheriff's deputies were working as employees, and acting as agents and servants of the Defendant County and the Individual Defendants and the DOE Defendants. The sheriff deputies and the DOE Defendants were acting under the color of law at all times. The deputies were at a work-related event, brandished an LASD handgun to threaten them, and identified themselves as cops. LASD terminated 4 of the deputies and disciplined several others for their conduct representing the department. Further, the defendant deputies are members of a deputy subgroup at LASD and assaulted Plaintiffs in furtherance of the Indians gang. The practices and customs of LASD, encouraging formation and perpetuation of violent deputy subgroups/gangs caused harm to Plaintiffs.

51. The Defendant County is liable by violating its own policies and establishing a custom and practice of the operation of deputy gangs and in engaging in excessive force against African American and Latino residents. Even though in this instance LASD terminated several of the

DOE Defendants for attacking Plaintiffs, it was too late to prevent the assaults on Plaintiffs. LASD have failed to hold deputies accountable for excessive force and to investigate use of excessive force, and the association of the violence to deputy subgroups, and this is what led to the attack on Plaintiffs.

52. The Ninth Circuit has held that in some cases, the plaintiff is entitled to have the jury instructed that evidence of governmental inaction – specifically, failure to investigate and discipline employees in the face of widespread constitutional violations – can support an inference that an unconstitutional custom or practice has been unofficially adopted. (*Hunter v. County of Sacramento* (9th Cir. 2011) 652 F.3d 1225, 1234, fn. 8.) "The [entity] may not be held liable for acts of [employees] unless 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or if the constitutional deprivation was 'visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.' " (*Redman v. County of San Diego* (9th Cir. 1991) 942 F.2d 1435, 1443-1444. ) • "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." (Bd. of the *County Comm'rs v. Brown* (1997) 520 U.S. 397, 404 [117 S.Ct. 1382, 137 L.Ed.2d 626].) • "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' " (*Castro v. County of Los Angeles* (9th Cir. 2016) 833 F.3d 1060, 1075 (en banc).) "While a rule or regulation promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies Monell's policy requirement, a 'policy' within the meaning of § 1983 is not limited to official legislative action. Indeed, a decision properly made by a local governmental entity's authorized decisionmaker - i.e., an official who 'possesses final authority to establish [local government] policy with respect to the [challenged] action' - may constitute official policy. 'Authority to make municipal policy

may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course whether an official had final policymaking authority is a question of state law.' " (*Thompson v. City of Los Angeles* (9th Cir. 1989) 885 F.2d 1439, 1443.) • "[A] plaintiff can show a custom or practice of violating a written policy; otherwise an entity, no matter how flagrant its actual routine practices, always could avoid liability by pointing to a pristine set of policies." (*Castro*, supra, 833 F.3d at p. 1075 fn. 10.) "Appellants need not show evidence of a policy or deficient training; evidence of an informal practice or custom will suffice." (*Nehad v. Browder* (9th Cir. 2019) 929 F.3d 1125, 1141.) "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." (*Jett v. Dallas Independent School Dist.* (1989) 491 U.S. 701, 737 [109 S.Ct. 2702, 105 L.Ed.2d 598].) • "[I]t is settled that whether an official is a policymaker for a county is dependent on an analysis of state law, not fact." (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 352 [70 Cal.Rptr.2d 823, 949 P.2d 920].) • "Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." (*Jett*, supra, 491 U.S. at p. 737.) *Gibson v. County of Washoe* [(9th Cir. 2002) 290 F.3d 1175, 1186] discussed two types of policies: those that result in the municipality itself violating someone's constitutional rights or instructing its employees to do so, and those that result, through omission, in municipal responsibility 'for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation.' We have referred to these two types of policies as policies of action and inaction." (*Tsao v. Desert Palace, Inc.* (9th Cir. 2012) 698 F.3d 1128, 1143.) • "A policy of inaction or omission

may be based on failure to implement procedural safeguards to prevent constitutional violations. To establish that there is a policy based on a failure to preserve constitutional rights, a plaintiff must show, in addition to a constitutional violation, 'that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right[,]' and that the policy caused the violation, 'in the sense that the [municipality] could have prevented the violation with an appropriate policy.' " (*Tsao*, supra, 698 F.3d at p.1143). • "To show deliberate indifference, [plaintiff] must demonstrate 'that [defendant] was on actual or constructive notice that its omission would likely result in a constitutional violation.' " (*Tsao*, supra, 698 F.3d at p. 1145.) • "[P]laintiff may prove . . . deliberate indifference, through evidence of a 'failure to investigate and discipline employees in the face of widespread constitutional violations.' Thus, it is sufficient under our case law to prove a 'custom' of encouraging excessive force to provide evidence that personnel have been permitted to use force with impunity." (*Rodriguez v. County of Los Angeles* (9th Cir. 2018) 891 F.3d 776, 803). "Discussing liability of a municipality under the federal Civil Rights Act based on 'custom,' the California Court of Appeal for the Fifth Appellate District recently noted, 'If the plaintiff seeks to show he was injured by governmental "custom," he must show that the governmental entity's "custom" was "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." ' " (*Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 569, fn.11 [195 Cal.Rptr. 268].) The federal courts have recognized that local elected officials and appointed department heads can make official policy or create official custom sufficient to impose liability under section 1983 on their governmental employers." (*Bach*, supra, 147 Cal.App.3d at p. 570.)

53. Sheriff Luna should be commended for LASD terminating some of Defendants. And it is a positive step that the Board of Supervisors continue to call for LASD reforms to eliminate deputy gangs. But the County and its customs and practices are responsible for what happened to Plaintiffs, as the County has only talked of reform since 2019 and continues to only give lip service to ending deputy gangs. The County has intentionally avoided reforming itself and ending deputy gangs and has shown a deliberate indifference to the harms caused

to residents and deputies by deputy gangs such as the Indians, to the degree the State Attorney General had to step in and force reform onto the County.

54. Plaintiffs were mentally, emotionally, and physically abused by Defendants, and continue to suffer from severe stress, PTSD, and trauma.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for Judgment against the Defendant as follows:

1. For special damages, including but not limited to, lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial, all in an amount set forth above and/or according to proof at the time of trial;
2. For further special damages, including but not limited to, lost future earnings, benefits and other prospective damages in an amount set forth above and/or according to proof at the time of trial;
3. For general damages in an amount set forth above and/or according to proof at the time of trial;
4. For interest: Pre-Judgment and Post-Judgment at the maximum legal rate;
5. For costs of suit; and
6. That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

Dated this May 28, 2024,    THE LAW OFFICES OF VINCENT MILLER

*Vincent Miller*

VINCENT MILLER, Attorney for Plaintiffs

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated this May 28, 2024

                                    THE LAW OFFICES OF VINCENT MILLER

                                    */s/ Vincent Miller*

                                    VINCENT MILLER, Attorney for Plaintiffs